## COURT OF APPEALS,

### March, 1911.

# THE PEOPLE v. ROBERT F. WOOD.

### (201 N. Y. 158.)

MURDER—EVIDENCE EXAMINED AND HELD TO JUSTIFY FINDING THAT
CRIME OF MURDER WAS COMMITTED WITH PREMEDITATION AND
DELIBERATION—INSANITY—ALLEGED HOSTILITY OF WITNESS—
PROPER ADMISSION OF EVIDENCE EXPLAINING ACT OF WITNESS.

On examination of the evidence given on the trial and convic-
tion of defendant for the crime of murder in the first degree, *held*,
that the evidence justified the finding that the defendant acted
with premeditation and deliberation, and that he was sane when
he committed the crime.

As bearing upon the alleged insanity of the defendant, counsel
for the defense interrogated his brother regarding an occurrence
in which the brother struck the defendant with a stick. The trial
justice asked the witness: " Why did you give him the blow with
the stick? " and the witness answered, " That's just the question I
wanted to ask just now. He told you that I gave him the blow
with the stick, but not why. He came to cut me up with a large
knife." Counsel for the defense interposed an objection, stating
that " the reason of the blow is immaterial, irrelevant and incom-
petent." The court permitted the witness, over counsel's excep-
tion, to explain what there was of that episode. *Held*, that as the
defense had sought to show the hostility of this witness toward
the defendant, his explanation was competent, and, therefore, the
ruling of the court was correct.

APPEAL from a judgment of the Court of General Sessions
of the Peace in and for the county of New York, rendered
June 25, 1909, upon a verdict convicting the defendant of
the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Richard H. Clarke, Jr., Gerard J. Cuoco* and *George L. Lewis* for appellant. The admission in evidence over objection and exception of an attempted assault by the defendant upon his brother was prejudicial error. (*People v. Molineux,* 168 N. Y. 264; *People v. Governale,* 193 N. Y. 581; *People v. Hill,* 198 N. Y. 64; *People v. Degarmo,* 179 N. Y. 130; *People v. Romano,* 84 App. Div. 318; *People v. Schlessel,* 196 N. Y. 476.) The verdict was against the evidence, against the weight of evidence and contrary to law. (*Roberts v. N. Y. E. R. R. Co.,* 128 N. Y. 464; *People v. Barberi,* 149 N. Y. 256.)

*Charles S. Whitman, District Attorney* (*Robert C. Taylor* of counsel), for respondent. A case of murder in the first degree was fully proved. (*People v. Hampartjoomian,* 196 N. Y. 77; *People v. Farmer,* 194 N. Y. 251; *People v. Hamilton,* 137 N. Y. 531; *People v. Leach,* 146 N. Y. 392; *People v. Cornetti,* 92 N. Y. 85; *People v. Schmidt,* 168 N. Y. 568; *People v. Sliney,* 137 N. Y. 570; *People v. Ferraro,* 161 N. Y. 365; *People v. Totterman,* 181 N. Y. 385.) There was no proof of legal insanity. (*People v. Coleman,* 198 N. Y. 166; *People v. Jones,* 194 N. Y. 83.) The admission of evidence of the assault with the knife did not constitute prejudicial error. (*Blossom v. Barrett,* 37 N. Y. 434; *People v. Leonardo,* 199 N. Y. 432; *Sims v. Sims,* 75 N. Y. 466; *People v. Rodawald,* 177 N. Y. 408; *People v. Monat,* 200 N. Y. 308; *People v. Rimieri,* 180 N. Y. 163; *People v. Gillette,* 191 N. Y. 107.)

WERNER, J. The defendant was convicted of the crime of murder in the first degree, under an indictment charging that in the borough of Manhattan, city of New York, and on the 29th day of September, 1908, the defendant killed one Amelia Roach by shooting her with a pistol. The killing was admitted

and the defense was insanity. After a careful study of the record we are convinced that this defense was not established, and that the evidence amply supports the verdict of the jury. We shall proceed directly to the consideration of the exceptions which are relied upon by counsel for the defense to secure a reversal of the judgment, and for that purpose we shall briefly refer to a few pertinent facts.

The defendant was at the time of the homicide a man between 47 and 49 years of age, who had never been married. His birthplace was the island of Barbadoes, which is one of the Carribean group. He had led a roving life, working at various manual employments, which included farming and sailing on the sea. At times he drank to excess, but about a year and a half before the homicide he became a religious convert in the city of Philadelphia, and from that time forth he abstained from all intoxicants. After leaving Philadelphia he worked at farming in New Jersey and while there he received a letter from his mother, who still resides in Barbadoes, giving him the address of his brother William in the city of New York. The defendant went to New York in July, 1908, and visited some of his relatives, among whom there was his favorite niece, Amelia Roach, the deceased. After remaining in New York for several days the defendant returned to his work in New Jersey, but went back to New York in August, 1908, and made his abode with Estelle McConney, another niece. The deceased, Amelia Roach, also lived there, and the defendant had heard rumors that she was " going to the bad," or in other words was leading or contemplating an immoral life. The theory of the defense was that this preyed upon his mind, which was already morbid upon the subject of religion, and led him to remonstrate with her. The deceased did not take kindly to the defendant's advice, and on the morning of September 29th, 1908, he entered her bedroom for the purpose, as he testified, of bidding

her good-bye. What took place there is best told in his own words: "I was in the kitchen that morning quite a little while, sitting there, reading a religious tract. It was some of the scripture, about the Lord. * * * I had made up my mind to pack my bundle—my grip—that night, and go away next morning to South Jersey, and go back to work with some other man, not that same man, that job had expired. I packed my grip that night; yes, the night before. After I left the kitchen I went into the parlor again; that is my room—it used to be a parlor. I thought it was time for me to go and I went. I did not take any grip. When I came out of my room I went to Amelia's room to say good-bye. * * * When I went in there she opened up her eyes. And she started cursing me." After repeating in detail what had been said in her cursing of him, he continued, "and then a darkness came over my eyes and I had a nervousness, * * * and then I shot her, and I don't know any more about it. I shot right away. I did not deliberate over it; I did not think about it." While this testimony tends to show that the defendant acted upon the impulse of the instant, there is other evidence from his own lips showing that he had felt hurt because the deceased repulsed him and refused to listen to his advice; that he had said to her, " I have a great mind to go out and buy a gun and shoot you," and when he was asked why he had shot the deceased he answered, " The Lord told me to do that." To the medical experts who examined him as to his mental condition, he said that he had purchased the revolver from a man in Philadelphia, but to the police officers he admitted that he had bought it in Ninth avenue, New York, on Saturday, September 26th, or three days before the homicide. He said that he bought it to shoot her with, and gave as a reason for not shooting her on that day that he had to get some other cartridges as the ones he first obtained did not fit the revolver. There is other evidence which clearly justified the finding that the defendant acted

with premeditation and deliberation, and the real question, upon the merits, was whether it was the premeditation of a sane or insane man. Upon that issue the evidence was such, we think, as to require the finding that the defendant was sane when he committed the murder.

As bearing upon the alleged insanity of the defendant, counsel for the defense interrogated his brother regarding an occurrence in Barbadoes when the two were young lads, in which the brother struck the defendant over the head with a stick, inflicting a wound two or three inches long, which left a scar. During the progress of the examination of this witness upon this subject the learned trial justice asked him the following question: " Why did you give him the blow with the stick? " and the witness answered, " That's just the question I wanted to ask just now. He told you that I gave him the blow with the stick, but not why. He came to cut me up with a large knife." At this juncture one of the counsel for the defense interposed an objection, stating that " the reason of the blow is immaterial, irrelevant and incompetent."

After some discussion the court permitted the witness, over counsel's exception, to explain what there was of that episode. Counsel for the defense now urge that it was prejudicial error to receive this evidence. We do not think so. The defense had sought to show the hostility of this witness toward the defendant, and his explanation was competent. If the evidence had been intended to bear solely upon the defense of insanity, as is now claimed by counsel for the defense, that should have been clearly and affirmatively asserted. There was no unequivocal statement that the evidence was not intended to discredit the witness, and, therefore, the ruling of the court was correct.

We have examined the charge in the light of the criticisms made upon it by defendant's counsel, and we conclude that it contains no error which was prejudicial to the defend-

ant. The record as a whole shows that the defendant has had a fair trial, and that his conviction is fully warranted by the evidence.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, VANN and WILLARD BARTLETT, JJ., concur; CHASE, J., concurs in result; HAIGHT, J., absent.

Judgment of conviction affirmed.